1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11    CARLOS A. MARTINEZ,                    Case No. 2:17-cv-00770-GJS

12            Plaintiff
                                             **MEMORANDUM OPINION AND**
13        v.                                 **ORDER**

14    NANCY A. BERRYHILL, Acting
      Commissioner of Social Security,
15
              Defendant.
16

17

18

19              **I.    PROCEDURAL HISTORY**

20          Plaintiff filed a complaint against the Commissioner of the Social Security

21    Administration ("Commissioner" or "Defendant") seeking review of the

22    Commissioner's denial of Plaintiff's applications for Disability Insurance Benefits

23    ("DIB") and Supplemental Security Income ("SSI").  The parties filed consents to

24    proceed before the undersigned United States Magistrate Judge [Dkts. 11-13] and

25    briefs addressing the disputed issues in the case [Dkt. 27 ("Pl. Mem."), Dkt. 30

26    ("Def. Mem."), and Dkt. 31 ("Pl. Reply")].  The Court has taken the parties' briefing

27    under submission without oral argument.  For the reasons discussed below, the

28    Court finds that this matter should be remanded for further proceedings.

## II.   ADMINISTRATIVE DECISION UNDER REVIEW

On January 19, 2015, Plaintiff filed applications for DIB and SSI, alleging that he became disabled as of September 13, 2013.  [Dkt. 15, Administrative Record ("AR") 212-38.]  The Commissioner denied his applications initially and upon reconsideration.  [AR 142-46, 154-59.]  Plaintiff requested a hearing.  [AR 161-62.]  On June 7, 2016, a hearing was held before Administrative Law Judge ("ALJ") Richard T. Breen.  [AR 36-77.]  On July 27, 2016, the ALJ issued a decision finding that Plaintiff is not disabled.  [AR 16-28, the "Decision."]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled for purposes of both his DIB and SSI applications.  *See* 20 C.F.R. §§ 404.1520(b)-(g)(1) 416.920(b)-(g)(1).  At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since September 13, 2013, the alleged onset date.  [AR 21.]  At step two, the ALJ found that Plaintiff suffered from the severe impairments of fibromyalgia, obstructive sleep apnea, and obesity, but that his hypertension and determinable mental impairment of affective disorder were non-severe.  [AR 21-22.]  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  [AR 23.]

The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 414.967(a) except he can never climb ladders, ropes or scaffolds; he can occasionally perform all other postural activities.  He can never work around unprotected heights, moving mechanical parts, dust, odors, fumes and pulmonary irritants.

[AR 23-26.]  Applying this RFC, at step four, the ALJ found that Plaintiff is able to perform his past relevant work as a bill collector, customer service representative,

and applications developer.  [AR 27.]  As a result, the ALJ determined that Plaintiff is not disabled.  [AR 27-28.]

Plaintiff requested review of the Decision, and on November 30, 2016, the Appeals Council denied review.  [AR 1-6.]

### III.    GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV.    ISSUES ON WHICH REVIEW IS SOUGHT

Plaintiff contends that the ALJ's Decision is erroneous in three respects. First, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC, because the ALJ allegedly failed to consider Plaintiff's pain and subjective symptom allegations and testimony, as well as his credibility, in assessing the RFC.  Second, Plaintiff contends that the ALJ erred by finding Plaintiff not fully credible with respect to his subjective pain and symptoms allegations and testimony.  Third, Plaintiff contends that the ALJ's step four analysis was error, because had the ALJ credited Plaintiff's pain and subjective symptoms allegations and testimony and crafted an RFC that incorporated them, the vocational expert's testimony would have mandated a finding of disabled.

///

///

3

# V.   DISCUSSION

## A. Preface

The Court's decision will focus on the second issue raised by Plaintiff, namely, whether the ALJ properly assessed Plaintiff's credibility with respect to his assertions of pain and symptoms.  The Court will not address the first issue raised by Plaintiff as a "separate" matter for two reasons.  First, the bulk of Plaintiff's first issue argument focuses on and relates to the subject-matter of the second issue, *i.e.*, whether the ALJ erred in his treatment of Plaintiff's claimed pain and subjective symptoms, and the related credibility assessment.  Second, the Court rejects Plaintiff's contention that the ALJ "drafted the RFC without first determining [Plaintiff's] credibility" and "symptom testimony."  (Pl. Mem. at 7.)  This case does not present the situation found erroneous in *Laborin v. Berryhill*, 867 F.3d 1151 (9th Cir. 2017).  Contrary to Plaintiff's contention, before formulating the RFC, the ALJ *did* consider Plaintiff's pain and subjective symptoms allegations and testimony, as well as his credibility, and the ALJ set forth his consideration of these matters and why his assessment led to the RFC he found to be appropriate.  (AR 23-26.)  The real issue here is whether the ALJ's assessment of Plaintiff's credibility and pain/subjective symptoms allegations and testimony was erroneous in any respect, including due to omission of matters alleged by Plaintiff or inadequate consideration of the matters actually noted by the ALJ.  As set forth below, the Court finds that error occurred and that this error warrants remand.

Having found that remand is warranted, the Court declines to consider the third issue raised by Plaintiff.  Further proceedings on remand with respect to assessing Plaintiff's credibility could result in a new RFC and vocational analysis and thereby moot the error alleged in the third issue.  Regardless of the Court's failure to resolve the third issue at this time, the ALJ should consider, and address if needed, Plaintiff's third issue contention of error when proceeding on remand.

## B. The Applicable Law

At the outset, the Court must address a contention the Commissioner makes that affects the law which governs here. For purposes of the second issue, the Commissioner appears to contend that the ALJ's principal reason for finding Plaintiff's pain/subjective symptoms testimony not credible was the ALJ's purported finding that Plaintiff had exaggerated his pain/symptoms and was malingering. (Def. Mem. at 15-17.) This simply is not correct. The ALJ set forth three reasons for finding Plaintiff to be not credible (which are set forth and discussed in the next Section), but exaggeration/malingering was not one of them. The ALJ's sole reference in this respect occurred when, in discussing the medical evidence related to Plaintiff's claimed mental symptoms, the ALJ noted a consulting psychiatrist's comment that "exaggeration of symptoms for financial gain and malingering could not be excluded." [AR 25, citing AR 553.] Apart from the fact that the psychiatrist's bare "could not be excluded" comment plainly was not an affirmative finding of exaggeration/malingering, the ALJ himself made no such affirmative finding, instead concluding only that Plaintiff's claim of mental limitations was not credible because it lacked substantiation in the medical evidence cited by the ALJ. [AR 25.] The Commissioner's assertion that the ALJ's comments regarding Plaintiff's use of a walker constituted an additional finding of exaggeration is equally baseless, as the ALJ did no such thing. Rather, as discussed *infra*, in noting the use of a walker, the ALJ found no more than that, in his opinion, the "longitudinal record" did not support a finding of medical necessity for its use. [AR 25.][1]

---

[1]     To the extent that the Commissioner is offering here purported exaggeration/malingering on Plaintiff's part as a reason to uphold the ALJ's adverse credibility finding, that argument fails given that the ALJ himself did not make such a finding. The ALJ's decision cannot be affirmed based on the Commissioner's post hoc rationalizations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and actual findings offered by

That out of the way, the law that governs the second issue is the following. "Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (internal quotation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (internal quotation omitted); *see also Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

### C. The ALJ's Stated Reasons For His Adverse Credibility Finding

After identifying his RFC formulation, the ALJ stated that in "making this finding," he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [AR 23.] The ALJ then said that he would follow a two-step

---

the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency").

process: (1) determining whether there is an underlying physical or mental impairment that reasonably could be expected to produce the claimant's pain or other symptoms; and (2) if so, then evaluating the intensity, persistence, and limiting effects of the pain or other symptoms to determine the extent to which they limit the claimant's functioning. [AR 23-24.] The ALJ found in Plaintiff's favor at step one, determining that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR 24.] At the second step, however, the ALJ rendered an adverse credibility finding, stating that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." The ALJ identified *three* reasons for this conclusion.

First, the ALJ concluded that the objective medical evidence was inconsistent with Plaintiff's claim that "he is unable to perform any work activity." [AR 24.]

With respect to physical symptoms and pain, the ALJ noted that Plaintiff had been diagnosed with obstructive sleep apnea in December 2012, and used a CPAP machine, and that by July 2015, his condition was considered to be severe. [*Id.*] The ALJ summarily rejected Plaintiff's complaint of low energy, asserting that Plaintiff "consistently" tested within "normal limits" and all test results had been "negative." [*Id.*] Although the ALJ, at step two, determined that Plaintiff had the severe impairment of fibromyalgia, for purposes of assessing Plaintiff's credibility, the ALJ discounted the effect of the impairment based on several cited examinations. [*Id.*] The ALJ flatly rejected Plaintiff's assertions that headaches affected his ability to work, because according to the ALJ: two MRI brain scans "were normal"; in a May 2015 examination, Plaintiff was more concerned about his exhaustion and weakness than his ongoing headache problem; and Plaintiff's headache pain had been relieved by ultrasound treatment and Topamax. [*Id.*] Finally, the ALJ concluded that Plaintiff's obesity did not cause any additional limitations beyond those incorporated into the RFC. [AR 25.]

With respect to mental symptoms, the ALJ concluded that Plaintiff's complaints of depression, fatigue, and exhaustion were not credible, because two examinations of him were "within normal limits." [AR 25.]

Second, the ALJ rejected Plaintiff's subjective symptoms/pain allegations on the ground that they are not consistent with his overall treatment history, which the ALJ found to be "conservative." [AR 25.] The ALJ noted that Plaintiff had been prescribed medications for his fatigue and muscle weakness, but Plaintiff said they did not relieve his symptoms and caused him to suffer from upset stomach, sleepiness, soreness, loss of focus, stiff joints, and fatigue. The ALJ discounted Plaintiff's statements, because at the hearing, Plaintiff testified that no longer takes Tramadol, takes Tylenol, and does not have side effects from his current medications. [*Id.*] The ALJ noted that Plaintiff is not under a psychiatrist's care, although he takes two psychotropic medications, which according to the ALJ, have benefitted Plaintiff and given him increased energy. [*Id.*] With respect to Plaintiff's use of a walker at the hearing, the ALJ conceded that an August 2015 treatment note indicated Plaintiff does need a walker with a seat for ambulation, but the ALJ disregarded it in favor of his own opinion that the "longitudinal record" does not establish any medical necessity for a walker. [*Id.*]

Third, the ALJ found that Plaintiff's reported daily activities are not consistent with his allegations of subjective symptoms/pain. [AR 26.] The ALJ noted that Plaintiff lives alone, prepares his own meals, shops for groceries alone, manages his money, and occasionally reads. [*Id.*] The ALJ concluded that, because Plaintiff "drives," Plaintiff's assertion that he "must always sit and stays at home resting" was not credible. [*Id.*] The ALJ concluded that the above-cited activities mean that Plaintiff's allegations of debilitating chronic fatigue and an inability to work are unsupported and not credible. [*Id.*]

Before turning to the ALJ's three stated reasons for finding Plaintiff to lack credibility, the Court first will examine the record regarding Plaintiff's subjective

8

symptom/pain allegations and testimony.

### D. Plaintiff's Claims Of Subjective Symptoms And Pain

In his several disability reports and exertional questionnaire, Plaintiff described a life circumscribed by exhaustion and weakness. Plaintiff stated that he suffers from severe physical exhaustion on a daily basis and has difficulty walking on a sustained basis. Plaintiff stated that he tries to walk 15-20 minutes as his doctor recommended, but can only do so for two to three days and then is so exhausted that he needs bed rest for the next 24 to 48 hours. Plaintiff stated that, when he walks, after about five to ten minutes, he starts losing strength in his legs and his legs get progressively weaker with every step. After 20 minutes, he is exhausted and feels like he is going to pass out and collapse. Plaintiff is terrified he will fall or pass out and hit his head on the cement, as he has fallen twice at home. Plaintiff said that he can climb one to two flights of stairs but his legs get weaker with every step. In addition, Plaintiff stated that he suffers from three to five big energy drops a day and, as a result, takes four naps of 45 minutes each a day. Plaintiff stated that, if he has to perform an activity (such as a doctor's appointment), he has to rest and lie down both before and after, and can only perform an activity for about 20 minutes before suffering from fatigue. [AR 227, 240-43, 247, 249-51, 253.] In a later disability report, Plaintiff stated that his fatigue, muscle weakness, and obstructive sleep apnea had increased since his prior reports. As a result, he had become more limited in his ability to grocery shop and lift items, was taking pain medication, and was using a wheeled walker. [AR 259.] Plaintiff stated that due to his increased fatigue and weakness, he now: only went to the grocery store once every four to five days; no longer could clean the kitchen and the bathroom at one time and had to limit cleaning to a little bit every day, then had to lay down for an hour or more due to fatigue and exhaustion; no longer did his own laundry or vacuuming; and due to increased leg weakness and pain, cannot

stand for long periods and has to sit and rest at home.  [AR 265.]

In his earlier disability reports, Petitioner stated that he had been prescribed Ritalin and Wellbutrin for fatigue (as well as received Vitamin B12 shots), Singulair for breathing, and Tramadol for headaches.  [AR 230.]  In a later disability report, Plaintiff stated that, in addition to Ritalin, Tramadol and Wellbutrin, he had been prescribed Clonodine for pain and a wheeled walker.  [AR 264.]

At the hearing, Plaintiff testified that he initially began feeling fatigue in 2011, and in early 2012, he started calling in sick a couple times a month.  [AR 49.] Following his receipt of some vaccinations in May 2012, he started getting headaches, which was a new symptom.  [*Id.*]  A muscle biopsy was performed to see if the vaccines had caused nerve damage, but it was negative.  [AR 50.]  The headaches are triggered by walking and lifting.  [AR 51.]

Plaintiff has received treatment for the headaches.  He has had a nerve block and three radiofrequency ablations.  The radiofrequency ablations helped with the headaches, although the pain on the left side did not go away completely, but the treatments caused his energy level to go down.  After a year and a half, the headaches came back as bad as before, but his doctor had said he should not have any further radiofrequency ablations.  [AR 59.]

In October 2014, Plaintiff fell for the first time, which happened because he loses strength in his legs.  When he walks for 20 minutes for a day or two, he loses leg strength and falls.  He was prescribed a walker after that.  [AR 50-51.]  He wakes up tired even after sleeping eight hours at night, with pain in his upper torso muscles.  [AR 52-53.]  He does have more energy, however, when he wakes up from a nap.  [AR 60.]  Pain is triggered by walking and lifting items at the grocery store and bringing them home.  [AR 53.]  He experiences energy drops, in which he gets weak and his energy fades away.  On a good day, he can sit for an hour without this happening but on a bad day, he can barely walk or sit, and can barely make it to the restroom.  [AR 58-59.]

Plaintiff testified that, initially, it was the fatigue alone that precluded him from working, because he could not focus or think and make it through the day. He still experiences this every day, along with forgetfulness. He testified that, as of the time of the hearing, he cannot work, because in addition to being unable to think, walking wears him out. When the ALJ asked if he could perform a seated job, Plaintiff testified that the minimal walking required to go to an office job would wear him out. [AR 51-52, 60-61.] Plaintiff testified that he did not believe he could handle working five days a week, given that he falls after walking for 20 minutes just two days in a row. [AR 56.] Plaintiff does not believe he could sit at a desk and work for two hours, because he does not have consistent energy throughout the day and has energy drops. [AR 63-64.]

With respect to medications, Plaintiff used to take Tramadol for pain, but it made him so dizzy that he ended up in the ER. As of the hearing, he was using Extra Strength Tylenol instead. For fatigue, he was taking Ritalin and Topiramate. He was not experiencing side effects from them. [AR 54-55.]

With respect to daily activities, Plaintiff testified that he still does grocery shopping but has had to stop buying bottled water, because lifting it and getting it home was too exhausting. He presently is using a water filter, but this involves an 11-cup device, which is difficult for him. To do the grocery shopping, he needs two days of bed rest. [AR 53, 55-56.] When he gets back from the grocery store, he has to go to bed immediately, use his CPAP machine, and rest anywhere from 20 minutes to an hour and a half, but usually around 45 minutes. [AR 57.] He does not use e-mail but occasionally watches YouTube videos on the computer. With respect to television, he sometimes watches music videos but no longer can watch movies, as he lacks the energy to do so. [AR 58.] When he tries to do chores, like washing dishes, he feels his energy ebb away after five minutes. When Plaintiff is home and not doing chores, he spends most of his time in bed. [AR 60.] His sister used to help him with chores but she no longer has the time. [AR 62.] The only cooking he

does is breakfast, and he lets dirty dishes pile up.  He only does laundry every five to six weeks now, instead of weekly as he would prefer.  He uses the drive-thru at CVS to pick up his medications, but usually has to do that as a separate trip from grocery shopping, because doing both is too tiring.  [AR 62-63.]

## E. The ALJ Erred.

### 1. Daily Activities

As noted earlier, the ALJ's third reason for rendering an adverse credibility finding was that Plaintiff's daily activities "are not consistent with the alleged degree of pain and impairment."  (AR 26.)

An ALJ may rely on "testimony about the claimant's daily activities" to "discredit an allegation of pain."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The underlying theory is that if "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."  *Id.*  An ALJ may rely on a claimant's daily activities to support an adverse credibility determination when those activities:  (1) "contradict [the claimant's] other testimony"; or (2) "meet the threshold for transferable work skills."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  But "[t]he ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  And moreover, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ found that the following alleged daily activities by Plaintiff "tend to show that he does have the ability to perform basic work functions": he lives alone; he prepares his own meals, he shops for groceries alone; he manages his own money; he occasionally reads; and he drives. [AR 26, citing May 19, 2015 consultative psychiatric examiner's report.] The ALJ's determination was erroneous for several reasons.

First, in describing Plaintiff's daily activities, the ALJ relied solely on a third party's description rather than on Plaintiff had said that he does on a daily basis, as impacted by his pain and symptoms, which is set forth in his disability reports and hearing testimony. As described above, the disability reports and testimony paint a picture of impairment due to pain and symptoms far greater than the functional picture described by the ALJ. The ALJ's description is incomplete and misleading, as it fails to account for what Plaintiff actually said – repeatedly and consistently – about his pain and symptoms.

For example, the ALJ notes that Plaintiff prepares his own meals and lives alone, but fails to explain how this contradicts Plaintiff's testimony or establishes that he can work. Plaintiff testified that he lives in a garage he rents from his brother and sister-in-law, he buys already-prepared food like grilled chicken, beans and rice and microwaves it or heats it on a cooktop, and that breakfast typically is the only meal he prepares. [AR 41-42, 61-62.] It is not clear how these circumstances equate to the ability to work a 40-hour work week in an office setting. The ALJ's cited reason that Plaintiff grocery shops alone is even more dubious. Plaintiff testified that he lacks any help, and thus, performs this task on his own because he has to eat. He testified in great detail about the grueling nature of the grocery shopping process and how exhausting it is for him. [AR 53, 55-56, 62-63.] The ALJ does not explain how the exercise of such limited abilities to buy food on occasion, requiring extensive resting afterward, are transferable to the workplace setting. The ALJ's reliance on the fact that Plaintiff can drive as a purported

13

inconsistency with his testimony that he sits most of the time and rests at home is specious. In his disability reports and in his hearing testimony, Plaintiff clearly explained how difficult walking is for him and that he drives to the grocery store, the pharmacy, and the ten miles to the doctor's office because he must do so. Moreover, as Plaintiff stated in his disability report, he limits his driving because he is afraid he will pass out.

The ALJ mischaracterized Plaintiff's testimony by culling out highly selected bits and omitting that which explained and/or supported the allegedly disabling nature of his claimed pain and symptoms. This selective use of the record was error. *Garrison*, 759 F.3d at 1016 (ALJ who found that claimant's pain testimony was inconsistent with her daily activities – talking on the phone, preparing meals, cleaning her room, and helping to care for her daughter – erred, because claimant's testimony emphasized that in performing these tasks, she was assisted by her mother, her pain prohibited her from performing many related daily tasks, and after performing the cited daily activities, she often needed to rest, including by napping); *see also Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result").

In addition, the ALJ's description of Plaintiff's daily activities based on the consultative examiner's report does not even accurately reflect the substance of that report. The examiner expressly noted that: Plaintiff performs his daily activities "with difficulty, weakness, and limitation of movement"; and his pastimes are limited to sitting in bed, resting, watching television, doing limited chores, and occasional reading or use of the computer. [AR 551.] The ALJ's incomplete, and thus inaccurate, description of the evidence on which he relied to find Plaintiff not credible was error. *See Reddick v. Chater*, 157 F.3d 715, 722-723 (9th Cir. 1998) (misleading paraphrasing of the record constitutes error). Moreover, the ALJ ignores the fact that the consultative examiner's report is dated May 2015, and that

in disability reports filed in August 2015, and October 2015 (well before the June 2016 hearing), Plaintiff stated that his symptoms had increased significantly, resulting in a further impairment of his abilities to undertake household activities. [*See* AR 265.] By relying solely on a single report, disingenuously noting only a portion of it, and ignoring the remainder of the evidence of record, the ALJ committed error. *Gallant*, 753 F.2d at 1456.

"The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," *Fair*, 885 F.2d at 603, and "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability," *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). The ALJ's third reason for finding Plaintiff to lack credibility is based on an incomplete picture of the evidence and a mischaracterization of the small portion of the record he deigned to cite. Moreover, the ALJ failed entirely to indicate, much less show, any nexus between the limited nature of Plaintiff's daily activities and the ability to function in the workplace environment. The third reason proffered by the ALJ is not properly supported and does not constitute a clear and convincing reason for rejecting Plaintiff's testimony.

## 2. Conservative Treatment

The ALJ's second reason for finding Plaintiff to lack credibility is that his "conservative" treatment history is inconsistent with Plaintiff's allegations regarding his pain and symptoms and their effect on his functioning. [AR 25.] To support this conclusion, the ALJ relies on four things: Plaintiff's testimony at the hearing that the medications he presently takes are not causing side effects; the fact that Plaintiff is not presently under psychiatric care, and in May 2015, he told the consultative psychiatric examiner that the psychotropic medications he took in the past had resulted in some improvement for a short period of time with increased energy; a

June 2014 progress note indicating that Plaintiff was walking 20 minutes daily and had improved energy; and that although Plaintiff used a walker at the hearing and had been prescribed such, based on the ALJ's review of the medical records, it was not medically necessary for him to do so.  [*Id.*]

A conservative course of treatment sometimes properly may serve as a basis for discrediting a claimant's allegations of disabling symptoms.  *See, e.g.*, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain).  The ALJ's cited reasons, however, do not come close to bringing his second proffered reason within this rule.

As a threshold matter, the ALJ's second stated reason fails for many of the same reasons as his third, as it rests on a mischaracterization of the record through inaccurate paraphrasing and omission, and wholly ignores the treatment Plaintiff has received.  For example, while it is true that, on May 19, 2015, Plaintiff did tell the consultative examiner that he had experienced some benefits and improvement from his psychotropic medications "for a short period of time with improved energy," in the very next sentence, the examiner noted that Plaintiff reported "decreased efficacy of medication over time" and that he had experienced side effects from them, including physical problems.  [AR 553.]  The ALJ's failure to acknowledge the examiner's comments in full was disingenuous, and it was error.  Similarly, while the ALJ correctly notes that, in a June 5, 2014 visit with treating physician Dr. Tran, Plaintiff said his energy had improved with "graded exercise" (walking) [AR 400], Dr. Tran's subsequent treatment notes make clear that this improvement was short-lived [AR 413 – July 10, 2014 note that graded exercise had "failed" and Plaintiff was still suffering from chronic fatigue syndrome].

With respect to the ALJ's finding regarding Plaintiff's use of a walker, the ALJ here committed the fatal error of substituting his own medical conclusion for that of a trained physician.  Plaintiff's treating physician – Dr. Tran – prescribed the

use of a walker due to Plaintiff's fatigue. [AR 584.] In setting aside Dr. Tran's medical judgment in favor of the ALJ's own medical assessment as to Plaintiff's need for a walker, the ALJ improperly rendered a medical opinion and, by doing so, he committed error. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own lay medical assessment beyond that demonstrated by the record); *Winters v. Barnhart*, No. C 02-5171 SI, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ may not "'set his own expertise against that of a physician'" who had proffered an opinion and "'should not have engaged in his own evaluations of the medical findings'") (citations omitted); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (an "ALJ may not substitute his own layman's opinion for the findings and opinion of a physician").

Finally, the ALJ conclusorily labels Plaintiff's treatment regimen over the years as "conservative," but fails entirely to identify what treatment was so conservative that its nature rendered Plaintiff's complaints of pain and disabling symptoms not believable. The ALJ ignores that Plaintiff received nerve block treatments, which involved steroid injections into the cervical spine. [AR 59, 308, 319.] The ALJ also ignores that, when the nerve blocks failed to provide relief, Plaintiff received multiple radiofrequency ablation treatments, another invasive procedure, which caused him to lose energy. [AR 59, 319, 685-88.] The Court questions whether treatments of this sort properly may be labeled conservative. *See, e.g., Garrison*, 759 F.3d at 1015 n. 20 ("we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Harvey v. Colvin*, No. CV 13-5376-PLA, 2014 WL 3845088, at *9 (C.D. Cal. Aug. 5, 2014)

(finding unconvincing and unsupported by the record ALJ's rejection of claimant's subjective symptom testimony on the ground that her treatment was conservative, when claimant had received epidural steroid injections to the cervical spine and pain medication); *Hayek v. Colvin*, No. 12-cv-1986 (TNL), 2013 WL 5425966, at *19 (D. Minn. Sept. 27, 2013) (when claimant tried all available treatments for her fibromyalgia, which included narcotic pain medications, physical therapy, nerve blocks, and radiofrequency ablation, the ALJ erred in finding that her treatment was routine and conservative); *Harrison v. Astrue*, No. 3:11-cv-365-MA, 2012 WL 527419, at *7 (D. Or. Feb. 16, 2012) (treatment including narcotic medications, nerve blocks and multiple steroid injections "certainly not conservative"). In any event, the ALJ ignored the fact of these treatments – including Plaintiff's testimony that the pain went away for a year and half thereafter but came back just as strong [AR 59] – and did not suggest that there were non-conservative or more aggressive treatment options available to Plaintiff that he failed to pursue. *See Lapeirre–Gutt v. Astrue,* 382 Fed. Appx. 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."). Accordingly, the Court does not find convincing the ALJ's reliance on the supposedly "conservative" nature of Plaintiff's treatment as a basis for discrediting him.

The ALJ's second reason for his adverse credibility finding was neither specific nor clear and convincing. The ALJ, therefore, erred.

### 3. Inconsistency Between Objective Evidence And Plaintiff's Testimony

Having found that the ALJ's second and third reasons for his adverse credibility determination were erroneous, this leaves only his first reason, namely, his conclusion that the objective medical evidence was inconsistent with Plaintiff's pain/symptoms testimony. It is well-established that an "ALJ may not discredit a

claimant's subjective testimony on" the sole basis that "no objective medical evidence" supports the claimant's testimony as to "the severity of the subjective symptoms from which he suffers." *Light v. Social Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "it is the very nature of excess pain to be out of proportion to the medical evidence," and thus, a finding that a claimant is not credible because his pain testimony is out of proportion to the medical evidence is an "inadequate reason." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). While the lack of medical evidence to support a claimant's allegations of disabling pain and symptoms "is a factor that the ALJ can consider in his credibility analysis," it "cannot form the sole basis for discounting pain testimony." *Burch*, 400 F.3d at 681.

The ALJ's first reason, on its own, is inadequate to support his adverse credibility determination, because the asserted failure of the medical record to corroborate Plaintiff's subjective symptom and pain testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ may not make a negative credibility finding "solely because" the claimant's symptom/pain testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Light*, 119 F.3d at 792 ("a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the [symptoms]."). The ALJ's first reason, therefore, is not clear and convincing and cannot save the ALJ's adverse credibility determination. As there is no basis for finding this error to be harmless, reversal is required.

## VI.  CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.*  A remand for an immediate award of benefits is appropriate "only in 'rare circumstances.'" *Brown-Hunter v . Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

The Court finds that remand is appropriate because the circumstances of this case do not preclude the possibility that further administrative review could remedy the ALJ's errors.  On remand, the Commissioner must re-evaluate Plaintiff's pain/subjective symptom assertions and testimony properly, which in turn may lead to the formulation of a new RFC and the need for additional vocational expert testimony.  The Court therefore declines to exercise its discretion to remand for an immediate award of benefits.  *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the Decision of the Commissioner is REVERSED and this matter

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: March 20, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE